UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
NATILEE DAWKINS,

                      Plaintiff,

      -against-

STATE UNIVERSITY OF NEW YORK AT
CORTLAND, and STEVE PATRICK,

                      Defendants.
-------------------------------------------------------------------

Case No.:   5:23-cv-1163 (GTS/ATB)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, NATILEE DAWKINS, by and through her attorneys, Harding Mazzotti, LLP, hereby files this Complaint against Defendant, SUNY Cortland ("Cortland") and Defendant, Steve Patrick ("Patrick"), collectively "Defendants", to allege upon knowledge concerning her own experience, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This is an action to remedy unlawful retaliation in response to Plaintiff's protected complaints of discrimination based on Plaintiff's race/color.

2. Plaintiff seeks declaratory relief, monetary relief, and punitive damages.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C §1331, as her claims arise under the laws of the United States, namely Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981, ("Section 1981"). The Court has pendent jurisdiction over Plaintiff's New York State Human Rights law claim of retaliation.

1

4. Venue is proper under 28 U.S.C §1391(b) because the Defendants reside in and do business within the Northern District of New York.

5. Defendant Cortland is an educational institution operating within and employing individuals in the jurisdiction, including Plaintiff, during the time period relevant to this Complaint. Additionally, the work performed by Plaintiff during her employment with Defendants was for the institution physically located within the Northern District of New York at Cortland University, Athletics Department, Park Center Cortland, New York.

## THE ADMINISTRATIVE REMEDIES REQUIREMENT

6. On May 31, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's charge alleged retaliation for complaints of discrimination in violation of Title VII - Charge No. 525-2022-00856.

7. On June 13, 2023, the EEOC issued a Notice of Right to Sue which is annexed hereto as Exhibit A. Plaintiff's Complaint is timely filed within 90 days of receipt of the Right to Sue.

8. No conditions precedent are required before filing claims under 42 U.S.C. § 1981 or under the New York State Human Rights Law.

## THE PARTIES

9. Plaintiff is an African American female over the age of eighteen who resides in Bronx County, New York state.

10. Plaintiff is a former employee of Defendant Cortland and former subordinate of individual Defendant Steve Patrick.

11. Defendant Cortland is a private not for profit educational institution located in Cortland, New York incorporated under the education laws of the State of New York.

12. Defendant Patrick is currently, and at all times herein referenced was, the Head Track Coach for Defendant Cortland.

13. At all times relevant to this Complaint, Defendant Patrick was Plaintiff's superior as related to her employment with Defendant Cortland.

14. Upon information and belief, Defendant Cortland employees more than fifteen (15) employees.

15. Upon information and belief, Defendant Cortland is an employer within the meaning of Title VII, 42 U.S.C. § 1981 and the New York State Human Rights law.

## STATEMENT OF FACTS

**Ms. Dawkins' background and her qualifications for the Cortland position.**

16. Plaintiff is a Black female that has been subjected to discrimination and retaliation based on her race.

17. A native of Kingston, Jamaica, Ms. Dawkins graduated from St. Andrew Technical High School, where she completed in track and field. During her high school career, she represented her home country in international competition at the 1996 Central American and Caribbean (CAC) Games, the 1998 Pan Am Championships and the 1997 Caribbean Free Trade Association (CARIFTA) Games, medaling in all three competitions.

18. Thereafter Ms. Dawkins earned a bachelor's degree in business administration from Gardner-Webb in 2002 and an international master's in business administration also from Garnder-Webb in 2006.  She also earned a Master of Public Policy degree from Delaware Valley in 2017.

19. Plaintiff began her coaching career as a graduate assistant at her alma mater, Gardner-Webb University in North Carolina, in 2004. During her three-year tenure on the Runnin' Bulldogs'

staff, she helped coach seven individual conference champions, coached fifteen athletes who set personal records, and also set five school records.

20. Plaintiff then coached at Binghamton University from 2006-13 and worked with twenty-seven individual conference champions, fifty-seven America East all-conference selections, fifteen NCAA Division I regional qualifiers and one NCAA Division I championship qualifier. Her duties included coaching, recruiting, compliance, scheduling, and administrative duties.

21. Plaintiff then coached at Bethune Cookman University during 2013-14 and Delaware Valley University from 2016-17.

22. Personally, Plaintiff was a five-time All-American during her intercollegiate career. She earned three NCAA Division II awards at Gardner-Webb and two NJCAA honors in one season at Ranger College. She was also a two-time NCAA Division I regional qualifier as well as a four-time All-ECAC honoree and three-time All-Atlantic Sun Conference selection.

23. Plaintiff is still Gardner-Webb's school record-holder in the indoor 55-meter hurdles (7.92) and 60-meter hurdles (8.45) and the outdoor 100-meter hurdles (13.78) and triple jump (12.85 meters/42' 2"), as well as part of the record-holding outdoor 4x100-meter and 4x200-meter relays.

24. Plaintiff began her employment with Respondent on September 18, 2018, as a First Assistant Coach in Track & Field program.

25. On June 28, 2021, Plaintiff was informed that her contract would not be renewed, and her last day would be September 16, 2022.

26. Plaintiff was then required to work more than one more year with Defendants with the knowledge that she was terminated in retaliation for her protected complaints, and that the college failed to take any corrective action on her complaints.

**Plaintiff's Complaints of Discrimination During Employment**

27. During her employment with Defendants, Plaintiff made complaints regarding discriminatory treatment that she had endured from the Defendant, Head Coach, Steve Patrick, a Caucasian male.

28. Early on Plaintiff realized that Patrick did not want her as a member of his staff. He excluded her often, did not refer to her when talking to athletes and never treated her the same as the other members of the staff. He also made it very clear that his poor treatment of plaintiff related to her race.

29. Specifically, Defendant Patrick stated early on to Plaintiff, "the only reason you were hired was because you are black and female."

30. The plaintiff was stunned and shocked by his comment but also afraid that if she took any action she would be subjected to retaliation.

31. In August 2019 at a welcome back to school event, Plaintiff was approached by the Athletic Director, Mike Utz, and asked how she was getting along at Cortland. When she indicated it was "good and bad" he seemed to know what she was referring to as his next question was, "How is that cat?" referring to Coach Patrick.

32. Plaintiff thought she might have the opportunity to discuss her concerns regarding her treatment by Patrick with Director Utz so responded by saying, "He can be very difficult to work with," hoping that would open the door to her being able to discuss the matter further.

However, as a result of her response, Utz shut down the conversation. The plaintiff then felt more afraid than ever to make complaints about Patrick.

33. However, a few months later, on March 9, 2020, Plaintiff told Cortland HR employee Marie Nelson, who Plaintiff was meeting with for training involved with participating in a search committee to hire a men's football coach, that she was told by Patrick that the only reason why she was hired is because she is black and female. Ms. Nelson never asked Plaintiff if she reported the incident to anyone before her, nor did she give her any direction on what to do, but instead stated that Plaintiff "was being the bigger person".

34. The only question Ms. Nelson asked was whether Coach Patrick was on the search committee they were discussing and then told Plaintiff that if he was, she should not be on it. Upon information and belief there was no investigation regarding the discrimination that Plaintiff shared with her in the meeting.

35. However, Ms. Nelson certainly had a duty to report knowledge of discrimination based on her position and Cortland's discrimination policies. Despite working in Human Resources at a New York State College and hearing an employee state that her superior made such a racially repulsive and discriminatory statement, nothing was done.

36. Ms. Nelson was just the first of multiple people at Cortland who failed to document or report discrimination in violation of Cortland's anti-discrimination policies.

37. On August 17, 2020, in one display of disgraceful conduct aimed at Plaintiff, Patrick, who at this point had done this multiple times already, sent Plaintiff an email entitled "Job Opportunity?" and included a link to a random coaching position listed online with the statement "You might want to apply! No telling how things *are* around here." His cryptic message was not at all cryptic to Plaintiff. He had been showing her for nearly two years

already that he did not want her around. His emails with job openings all clearly indicating that he did not want her to remain at Cortland.

38. Plaintiff stood up for herself that day which only furthered his retaliation. She replied to the email, bcc'ing both Human Resources and Athletic Director, Mike Utz, telling Patrick in no uncertain terms, "I was not interested the first, second, nor now third time, you emailed me job opportunities elsewhere" and telling him in no uncertain terms to stop!

39. Shockingly, neither Utz or Human Resources ever contacted Plaintiff about this disgraceful email or took any action against Patrick for sending it. Instead, they continued to give him carte blanche to treat Plaintiff however he pleased.

40. Of course, Patrick's disgraceful treatment of Plaintiff only increased after her taking a stand and her next performance review shortly thereafter was clearly affected by her standing up for herself on August 17, 2020, as Patrick knocked down his ratings of her from her last two positive reviews and included negative secondary reviews which he had never done before.

41. Frustrated and desperate, on November 2, 2020, Plaintiff met with Justine Ochs (Cortland Human Resources) to discuss Patrick's performance review of Plaintiff which had declined as a result of her August 17, 2020 documented conflict with Patrick. At that time, Plaintiff also mustered courage once again and told Ochs of the treatment by Patrick and specifically about what he stated about her only being hired because she was a black female.

42. The conversation is documented in follow-up emails by Justine Ochs on November 5, 2020.

43. Following that conversation, Ochs provided Plaintiff with contact to the Affirmative Action Officer Melanie Woodward.

44. Plaintiff spoke with Ms. Woodward by phone on November 6, 2020, and then ultimately met with Ms. Woodward and her union representative, Jaclyn Pittsley, on November 11, 2020.

45. On November 16, 2020, Plaintiff sent Ms. Woodward an email stating she wanted to keep her complaint confidential. Cortland has a discrimination policy that provides for confidential complaints.

46. Upon information and belief, neither Woodward nor anyone at Cortland investigated what Plaintiff reported or took any corrective action.

47. However, it became clear that Patrick knew of Plaintiff's complaints to HR because in late winter/early-spring 2021, Patrick, with his door open in the office suite, bellowed, "I am sick of hearing people are complaining about me to Human Resources" when he was well aware Plaintiff was within hearing distance.  The level of his voice let Plaintiff know he was making the statement for no purpose other than for her to hear him.

**Additional evidence of the discriminatory biases of Defendant Patrick**

48. During the time of Plaintiff's tenure at Cortland, a student track athlete informed Plaintiff of the following situation which the student witnessed and was upset by.

49.  During a practice with Coach Steve there were four female athletes that were involved. The student documented that during the practice the student identified as Athlete one had accidentally stepped on athlete two's foot and earlier that day athlete three had spiked athlete four and it just so happened to be that athletes one and three were white and athletes two and four were black. To this Steve Patrick responded with "I see the white girls are just beating up the black girls today." The student athlete attested that this made the whole team very visibly uncomfortable" except for Patrick.

50. The student detailed that, "A few moments after that happened, he [Patrick] mixed up the two girls who happened to be white and then looked at athletes and said "look I'm mixing up the white girls today instead" implying that all black girls look alike and are easy to mix up.

51. The student relayed that at that point "everyone went wide eyed and was so uncomfortable while he continued to laugh at what he had said. For the rest of the practice all of us avoided him and were talking about how uncomfortable we were with the situation that had just taken place".

**The ultimate retaliation experienced by Plaintiff**

52. Beginning in early 2021, Patrick systematically removed Plaintiff from meetings and discussions related to the team and treated Plaintiff as if she was not a member of the staff.

53. Patrick ignored Plaintiff in front of staff and athletes and treated her as if she was a bystander rather than a member of his staff. However, Patrick made sure that Plaintiff was working at all times and increased her workload whenever possible trying to drive her to quit.

54. At one point in February 2021, Plaintiff worked forty-one (41) days straight without a day off.

55. On May 24, 2021, at his earliest opportunity after Plaintiff's protected complaints of discrimination and of her own opposition to his discrimination made directly to Patrick in August 2020, Patrick gave Plaintiff a dramatically different performance review from all prior annual reviews.

56. In the May 24, 2021, review, Plaintiff's ratings plummeted from Patrick rating her a four (above average) in nine categories to now only being rated a four in one category. While

Plaintiff was still rated "satisfactory" overall, Patrick shockingly moved for non-renewal of her contract with this review, just six months after her formal complaints of discrimination.

57. Despite what Patrick stated in his review, Plaintiff had performed all of her contractual duties and was recruiting athletes to the program at all times she was employed even though during most of the year 2020 and parts of 2021 the college, recruiting and all parts of her job were significantly affected by closures and restrictions related to the pandemic. Plaintiff was working more hours during the time frame of the review period than ever before, and Patrick knew that. His review was not genuine or reflective of her performance.

58. In June 2021 Plaintiff was informed her contract was terminated and she would not be returning for the new college year in September 2022. Cortland permitted Patrick to terminate Plaintiff with no basis other than his retaliatory animus.

59. Plaintiff was given the option to work remotely until September 16, 2022.

60. However, once Plaintiff began to work remotely, Defendant Patrick immediately began to utilize the opportunity to completely detach her from the team and coaching events.

## AS AND FOR A FIRST CAUSE OF ACTION
## As to all Defendants
**Retaliation for Protected Complaints in Violation of Title VII 42 U.S.C. § 2000e *et seq.***

61. Plaintiff repeats, realleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

62. The Defendants retaliated against Plaintiff in violation of her rights secured by Title VII for reporting what she believed were offensive and discriminatory statements and actions by Defendant Patrick.

63. Defendants terminated Plaintiff due to her complaints of Patrick's discriminatory treatment.

64. Plaintiff suffered severe emotional distress as a result of the termination action.

10

65. Plaintiff suffered significant economic loss as a result of the termination of her employment by Defendants.

66. Defendants should also be liable to Plaintiff for punitive damages, since Defendants were intentionally or recklessly indifferent to Plaintiff's rights in terminating her.

67. Defendants engaged in discrimination with malice or with reckless indifference to the right of the Plaintiff to be free from such intentional discrimination.

68. Defendants discriminated in the face of a perceived risk that their actions would violate federal law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**As to all Defendants**
**Retaliation for Protected Complaints in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**

69. Plaintiff repeats, realleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

70. The Defendants retaliated against Plaintiff in violation of her rights secured by 42 U.S.C. § 1981 for reporting what she believed were offensive and discriminatory statements and actions by Defendant Patrick.

71. Defendants terminated Plaintiff due to her complaints of Patrick's discriminatory treatment.

72. Plaintiff suffered severe emotional distress as a result of the termination action.

73. Plaintiff suffered significant economic loss as a result of the termination of her employment by Defendants. Defendants should also be liable to Plaintiff for punitive damages, since Defendants were intentionally or recklessly indifferent to Plaintiff's rights in terminating her.

74. Defendants engaged in discrimination with malice or with reckless indifference to the right of the Plaintiff to be free from such intentional discrimination.

75. Defendants discriminated in the face of a perceived risk that their actions would violate federal law.

### AS AND FOR A THIRD CAUSE OF ACTION
### As to all Defendants
**Retaliation for Protected Complaints in Violation of the New York State Human Rights Law**

76. Plaintiff repeats, realleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

77. The Defendants retaliated against Plaintiff in violation of her rights secured by the New York State Human Rights law for reporting what she believed were offensive and discriminatory statements and conduct by Defendant Patrick.

78. Defendants terminated Plaintiff due to her complaints of Patrick's discriminatory treatment.

79. Plaintiff suffered severe emotional distress as a result of the termination action.

80. Plaintiff suffered significant economic loss as a result of the termination of her employment by Defendants. Defendants should also be liable to Plaintiff for punitive damages, since Defendants were intentionally or recklessly indifferent to Plaintiff's rights in terminating her.

81. Defendants engaged in discrimination with malice or with reckless indifference to the right of the Plaintiff to be free from such intentional discrimination.

82. Defendants discriminated in the face of a perceived risk that their actions would violate federal law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through her attorneys, Harding Mazzotti, L.L.P., demands judgment against all Defendants, and in favor of Plaintiff as follows:

A. Declaring Defendants' conduct to be in violation of Plaintiff's rights under Title VII;

B. Declaring Defendants' conduct to be in violation of Plaintiff's rights under Section 1981;

C. Awarding Plaintiff back pay, front pay, pre-judgment interest, lost fringe benefits, compensatory damages, liquidated damages, punitive damages, costs, and attorney's fees; and,

D. Awarding Plaintiff such other, further, and/or different relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury with respect to all issues.

Dated: September 11, 2023
Albany, New York

By: *Kelly A. Magnuson*

Kelly A. Magnuson, Bar Number: 519535
*Attorneys for Plaintiff*
**HARDING MAZZOTTI, LLP**
P.O. Box 15141
Albany, New York 12212
Tel. & Fax: (518) 556-3402
Email: Kelly.Magnuson@1800law1010.com